UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

CCA Bahamas Ltd., a foreign limited company,

    Plaintiff,

v.

Conquest Financial Management Corporation d/b/a Source Outdoor, a Florida corporation,

    Defendants.
_____/

## VERIFIED COMPLAINT

Plaintiff, CCA BAHAMAS LTD. ("Plaintiff" or "CCA"), hereby files suit against Defendant, Conquest Financial Management Corporation, d/b/a SOURCE OUTDOOR ("Defendant" or "Source"), and alleges as follows:

### JURISDICTION, PARTIES AND VENUE

1. This is an action for breach of contract, injunctive relief, conversion and trespass upon chattel arising from Source's failure to deliver 1,420 chaise lounge chairs (the "Chairs") which have been paid for in full by Plaintiff.

2. Plaintiff CCA is a foreign corporation duly incorporated and existing under the laws of the Bahamas, with its principal place of business located in Nassau, Bahamas.

3. Defendant Source is a Florida corporation authorized to do business and doing business in Florida, with its principal place of business in Miami Dade County, Florida.

4.    This Court has diversity jurisdiction under 28 U.S.C. §1332 in that this action is between a subject of a foreign state and a Florida corporation and the matter in controversy exceeds the sum or value of $75,000.00 USD, exclusive of interest or costs.

5.    This Court is the proper venue for this action because Defendant's principal place of business is in Miami Dade County, pursuant to 28 U.S.C. §1391.  This Court has personal jurisdiction over Defendant.

## FACTS COMMON TO ALL COUNTS

6.    CCA is the general contractor of the $3.5 billion dollar Baha Mar resort project in Nassau, Bahamas (the "Project").  CCA assumed responsibility for the procurement and delivery of furniture, fixtures and equipment after the commencement of the Project.  The Government of The Commonwealth of The Bahamas has determined and articulated that the completion of this Project is a national priority.

7.    Pursuant to the contract documents for this Project, CCA is required to achieve "Substantial Completion" of the Project no later than October 15, 2017.  Because of the significance of the Project and the need for completion by the beginning of the "high season" in the Bahamas, the contract documents contain a penalty provision should "Substantial Completion" not be achieved by this date certain.  The initial penalty is $150,000.00 per day.  It increases to $250,000.00 per day after 31 days.

8.    To fulfill a key element of a major component of the Project, CCA entered into a written agreement with Source for the completion of the purchase and delivery of 2,891 Chairs.  Consistent with industry standards, the written agreement took the form of a fully executed purchase order specifying the item to be sold, the quantity, the cost, and payment terms.

9. Prior to the execution of the contract at issue here, 1,471 of the Chairs had been delivered and for which Source had received full payment, which Source acknowledged. On or about January 6, 2017 CCA and Source executed a Purchase Order to provide for the delivery of and payment for the balance of the 1,420 Chairs originally contemplated (the "Contract"). Source agreed to deliver the remaining 1,420 Chairs and CCA agreed to pay the balance of the original purchase price, that balance being $390,500.00. A true and correct copy of the Contract is attached hereto as Exhibit A.

10. The urgency of delivery was agreed upon by the Parties with the inclusion of a special note in the Contract: "to be shipped immediately".

11. In accordance with the terms of the Contract, CCA paid Source the remaining balance of $390,500.00, receipt of which was confirmed by Source on the accompanying invoice (the invoice, along with the Purchase Order, collectively referred to as "Contract").

12. Source has intentionally failed and refused to deliver the remaining 1,420 Chairs.

13. It appears that Source is withholding the 1,420 Chairs belonging to CCA as a coercive tactic related to separate monies allegedly owed to Source by parties other than CCA. Source is improperly and unjustly holding these Chairs captive in order to create some perceived bargaining leverage with this third party. The Contract provides no lawful basis for the withholding of the Chairs on this basis and Source has identified none.

14. CCA is now informed and believes that Source has determined to offer the Chairs at issue here for sale on the open market. This conduct would allow Source to sell the same Chairs twice and, more to the point, would foreclose permanently the ability of CCA to obtain the items for which they have already paid in full and which are essential to the timely completion of the Project.

15. Even if CCA were to immediately endeavor to purchase replacement chairs, the time required for the negotiation of a new purchase order, for the manufacture of the replacement items and for their shipment to the Bahamas would result in non-compliance by CCA with the Substantial Completion date and would subject it to the extraordinarily large liquidated damages provided for in CCA's agreement with Perfect Luck Assets Limited (the "Owner"), the owner of the Project.

16. Aside from the unmanageable financial burden that would be visited upon CCA were it unable to obtain immediate receipt of the Chairs, because of the extremely high level of publicity and governmental attention being paid to this particular Project, CCA's reputation would suffer wide-spread, incalculable and irreparable damage.

17. On May 3, 2017 CCA sent a letter to Source rightfully demanding the immediate delivery of its 1,420 Chairs. The letter further demanded that Source immediately cease and desist from any sales of the Chairs to third parties. A true and correct copy of the demand letter is attached hereto as Exhibit B.

18. The deadline for Source's response has since passed and Source has refused to deliver any of the 1,420 Chairs for which it has been paid in full. Contacted by counsel for CCA, Source's lawyer advised that Source would be taking no affirmative action to provide the Chairs and that CCA should "do what it has to do."

19. Plaintiff has no adequate remedy at law because, unless Source is required by this Court to specifically perform its contract obligations, CCA will be unable to meet the Substantial Completion deadline for the Project, will be faced with catastrophic penalty payments and will suffer irreparable harm to its business reputation and the loss of goodwill in the eyes of the public. No simple breach of contract action will allow it to avoid these extremely dire consequences.

20. CCA is informed and believes that Source has and would have no possible means of reimbursing CCA for the damages it would incur were the liquidated damage provisions of CCA's agreement with the Owner to be invoked. There would be no meaningful remedy of law.

21. Source's conduct is in clear, knowing and intentional violation of its express obligations under the Contract, demonstrating a high likelihood of CCA's success on the merits of its claims.

22. Considerations of public interest weigh in favor of an injunction being entered against Source. Requiring performance of contracts as to which there is no dispute and as to which the seller has been paid in full, as acknowledged by the seller, is obviously in the interest of ensuring the free flow of goods in commerce and the necessary respect for contractual relationships. It is of equal importance that contract partners not be permitted to engage in this blatant form of commercial extortion to create bargaining leverage with parties unrelated to the contract at issue. No public interest is served in accommodating this outrageous conduct. The public has a right to the orderly regulation of business and this Court should uphold the reasonable expectation of foreign entities

contracting with American companies. This is particularly true where the contractual breach is deliberate and calculated.

23. Accordingly, CCA seeks injunctive relief or an order of specific performance compelling Source to immediately deliver the 1,420 Chairs.

24. As a direct and proximate result of Source's wrongful conduct, CCA has suffered damages in excess of $75,000.00, which represents the amount paid for Chairs that are being withheld, loss to its business reputation and goodwill, and consequential damages stemming from Defendant's breach.

## COUNT I – BREACH OF CONTRACT

25. CCA adopts and incorporates the allegations in paragraphs 1-24 as if fully set forth herein.

26. The Contract is binding on Source. CCA has fully performed its obligations thereunder.

27. Despite its clear obligation under the Contract and under the course of dealing between the parties, Source has failed and refused and continues to fail and refuse to deliver the 1,420 Chairs. Source has wrongfully and knowingly retained the $390,500.00 payment.

28. Source has breached the Contract and continues to breach the Contract and has failed to respond in any way to CCA's written demand.

29. As a direct and unavoidable result of Source's breach, CCA has suffered and will continue to suffer irreparable harm through the pendency of this litigation.

WHEREFORE, Plaintiff, CCA BAHAMAS LTD., respectfully requests that this Court enter orders for preliminary and permanent injunction against Defendant Source,

or an order of specific performance compelling Defendant Source to immediately deliver the 1,420 Chairs at issue and award direct and consequential damages for breaching the contract, court costs and such other and further relief as this Court deems just and proper.

## COUNT II – CONVERSION

30. CCA adopts and incorporates the allegations in paragraphs 1-24 as if fully set forth herein.

31. Source has wrongfully deprived and intentionally dispossessed CCA of its property without its consent, for an indefinite amount of time.

32. Upon information and belief, Source has undertaken to sell or transfer CCA's Chairs to third parties.

33. As a result of Source's actions, CCA has suffered damages stemming from the loss of use of the Chairs, loss to its reputation and goodwill, and such harm will continue through the pendency of this litigation.

WHEREFORE, Plaintiff, CCA BAHAMAS LTD., respectfully requests that this Court enter orders for preliminary and permanent injunction against Defendant Source, or an order of specific performance compelling Defendant Source to immediately deliver the 1,420 Chairs, and award direct and consequential damages for conversion, court costs and such other and further relief this Court deems just and proper.

## COUNT III – TRESPASS TO CHATTEL

34. CCA adopts and incorporates the allegations in paragraphs 1-24 as if fully set forth herein.

35. Source has wrongfully deprived and intentionally dispossessed CCA of its property without its consent, for an indefinite period of time.

36. Upon information and belief, Source has undertaken to sell or transfer CCA's Chairs to third parties.

37. As a result of Source's actions, CCA has suffered damages stemming from the loss of use of the Chairs, loss to its reputation and goodwill, and these damages will continue in the future.

WHEREFORE, Plaintiff, CCA BAHAMAS LTD., respectfully requests that this Court enter orders for preliminary and permanent injunction against Defendant Source, or an order of specific performance compelling Defendant Source to immediately deliver the 1,420 Chairs, and award direct and consequential damages for trespass to chattel, court costs and such other and further relief this Court deems just and proper.

## COUNT IV – TORTIOUS INTERFERENCE

38. CCA adopts and incorporates the allegations in paragraphs 1-24 as if fully set forth herein.

39. CCA currently has an advantageous business relationship with the Owner of the Project under which CCA has profited and is profiting both financially and commercially.

40. Source is fully aware of the advantageous business relationship between CCA and the Owner. In fact, Source is exploiting this relationship by attempting to extort payments allegedly owed to Source by withholding CCA's property from CCA.

41. Source is apparently trying to collect money owed to it by the original owner of the Project, Baha Mar, Ltd. ("BML"), which became insolvent. BML's secured creditor liquidated its assets and then sold the Project to Owner. In order to coerce CCA to pay the debts of BML, which if anything are owed by a third party and demonstrably unrelated

to the Contract, Source is calculatedly and unjustifiably interfering with CCA's relationship with the Owner by withholding delivery of the Chairs, thus making it impossible for CCA to achieve key construction deadlines and in this manner undermining CCA's own contractual commitments. Not only is this malicious and insupportable conduct interfering with the existing contract between CCA and the Owner, it is obviously interfering with CCA's long-term advantageous business relationship with the Owner.

42. CCA has suffered and continues to suffer harm as a direct result of Source's intentional and unjustified interference with its advantageous business relationship with Owner. Among other forms of damages, CCA is being exposed to the dramatically severe liquidated damage provision of its agreement with the Owner and is at risk of the loss of its valuable and lucrative relationship with Owner, the marketing and development opportunities related to the successful grand opening of the Baha Mar Resort, and subsequent construction delays stemming from Source's breach.

WHEREFORE, Plaintiff, CCA BAHAMAS LTD., respectfully requests that this Court enter orders for preliminary and permanent injunction against Defendant Source, or an order of specific performance, compelling Defendant Source to immediately deliver the Chairs and award direct and consequential damages for tortious interference, court costs and such other and further relief this Court deems just and proper.

Dated: June 29, 2017

Respectfully submitted,

/s/ ALVIN B. DAVIS
Alvin B. Davis
Florida Bar No. 218073
Jonathan R. Weiss
Florida Bar No. 057904
Squire Patton Boggs (US) LLP
200 South Biscayne Boulevard,
Suite 4700,
Miami, FL 33131
Telephone: (305) 577 2835
Facsimile: (305) 577 7001
Email: alvin.davis@squirepb.com
Email: jonathan.weiss@squirepb.com

**Counsel for Plaintiff**

## VERIFICATION

I, Natalia Dwornik, am the Contract Manager of CCA Bahamas Ltd., the Plaintiff in this action. I have read the foregoing Verified Complaint and am familiar with its contents. I declare under penalty of perjury under the laws of the United States that all of the factual statements contained in the foregoing Complaint are true and accurate to the best of my knowledge, understanding, and belief and are based upon personal knowledge, except where expressly indicated otherwise.

Dated: June 21, 2017

Name: NATALIA DWORNIK
Title: CONTRACT MANAGER

I hereby certify and confirm that Natalia Dwornik personally appeared before me, having produced her European Union United Kingdom of Great Britain and Northern Ireland passport, number 801821967, as proof of identification, and signed her name hereon

L. Obafemi Pindling
NOTARY PUBLIC
Nassau, Bahamas

010-8493-8929/1/AMERICAS

Dated this 28th day of June, A.D. 2017