UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:17-CV-22437

CCA Bahamas Ltd., a foreign limited
company,

       Plaintiff,

v.

Conquest Financial Management
Corporation d/b/a Source Outdoor, a
Florida corporation,

       Defendants.

_____/

## SUPPLEMENTAL AFFIDAVIT OF NATALIA DWORNIK IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Natalia Dwornik after being duly sworn, deposes and says:

1.     This Affidavit is intended to address certain assertions contained in the Affidavit of Mr. Gerald Shvartsman and to clarify CCA's undertaking in regard to the Chairs at issue here.

2.     In my initial correspondence I indicated that CCA wished to complete outstanding orders that were in limbo due to the bankruptcy of Baha Mar Ltd ("BML"). See Composite Exhibit A to Mr. Shvartsman's Affidavit. In that email and in a number of subsequent communications, I requested information about the status of those prior orders and of the deposits associated with those orders. See Exhibit B to Mr. Shvartsman's Affidavit. Exhibit 1 to this Affidavit.

3.  CCA never received the necessary, complete information requested.  We were unable to determine what remained to be paid as to which prior orders from our predecessor.

4.  We were further advised by the Receiver of the Baha Mar Project that Source Outdoor was refusing to honor $450,000 in deposits previously paid.

5.  This information was essential.  CCA needed to know what had been ordered by its predecessor company, what deposits had been paid and what remained to be paid at to those previous orders. We were prepared to issue purchase orders for the amounts remaining due and purchase orders for any items as to which no deposit had been paid.  We could do neither without the requested information. Source acknowledged that it was unable to provide the earlier purchase orders.  See Exhibit 2.

6.  Under those circumstances, CCA could not process any additional orders at that time.  See Exhibit C to the Shvartsman Affidavit.

7.  CCA did not renege on its offer to make Source whole.  It simply never received the complete information required for it to do so.

8.  Although Source is now taking the position that it need not honor our Purchase Order, it did not take that position during the events at issue here.  Following my notice to Source that CCA could process further Source orders, Source continued to keep us advised of the progress of our Purchase Order and did not advise CCA that the Chairs would not be delivered until Mr. Shvartsman's self-serving email of April 19, 2017.  Exhibit C to CCA's Supplemental Memorandum and Exhibit D to the Shvartsman Affidavit.

9.      Following my email of February 7, 2017, Source advised CCA on February 28, 2017 that CCA's order was in production and the goods would leave Source's premises on or before May 26, 2017. See Exhibit C to CCA's Supplemental Memorandum.  Contrary to Mr. Shvartsman's Affidavit, there was no indication that our Chairs were not being manufactured or that they would not be delivered.

10.      The Purchase Order at issue here was a standard form of purchase order that had been accepted by Source on previous occasions.  There was never a dispute as to whether it was a "contract" or not until this litigation arose.

11.      The Chairs at issue here were made to order for the Baha Mar Project. They are not "off-the-shelf" items.  This specific design, to match the design of the 1400 Chairs previously delivered, would have to be specially ordered.

12.      CCA was advised of the sale of what appeared to be its Chairs by an email sent directly to me from Candice McCarthy at Source.  The chairs pictured appear identical to the Chairs we purchased.  A picture of a Chair on site is attached as Exhibit 3.  The print-out from the Source website is attached as Exhibit 4, with an enlarged picture of the chairs being offered.  They are our Chairs.  The website even notes that they are in white, the color we ordered, and are not available pursuant to this offer in any other color.

13.      CCA was dumbfounded to be advised by Mr. Shvartsman that its $390,500 had been applied by Source, without CCA's knowledge or consent, to expenses attributable to entities other than CCA.   That money had been paid by CCA in good faith in January of 2017.  At no time prior to Mr. Shvartsman's April 17, 2017 letter, was CCA ever advised of the misappropriation of its funds in this manner.

FURTHER AFFIANT SAYETH NAUGHT.

_____
NATALIA DWORNIK

Notary Public
Print Name: *Francine Taylor Orsini*
Commission No.:

My Commission Expires:

[ ] Personally known
[ ✓ ] Produced Identification   *Passport*
Type:

FRANCINE TAYLOR ORSINI
Commission # FF 198366
Expires May 12, 2019
Bonded Thru Troy Fain Insurance 800-385-7019