UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:17-CV-22437-KMM

CCA Bahamas Ltd., a foreign limited
company,

      Plaintiff,

v.

Conquest Financial Management
Corporation d/b/a Source Outdoor, a
Florida corporation,

      Defendants.
                                    /

## AMENDED COMPLAINT

Plaintiff, CCA BAHAMAS LTD. ("Plaintiff" or "CCA") hereby files this Amended Complaint against Defendant, Conquest Financial Management Corporation, d/b/a SOURCE OUTDOOR ("Defendant" or "Source") and alleges as follows:

### JURISDICTION, PARTIES AND VENUE

1. This is an action for breach of contract and fraud arising out of an effort by CCA to purchase 1,420 chaise lounge chairs (the "Chairs") from Source for use at the Baha Mar resort in the Bahamas.

2. Plaintiff CCA is a foreign corporation duly incorporated and existing under the laws of the Bahamas, with its principal place of business located in Nassau, Bahamas.

3. Defendant Source is a Florida corporation authorized to do business and doing business in Florida, with its principal place of business in Miami-Dade County, Florida.

4. This Court has diversity jurisdiction under 28 U.S.C. §1332 in that this action is between a subject of a foreign state and a Florida corporation and the matter in controversy exceeds the sum or value of $75,000.00 USD, exclusive of interest or costs.

5. This Court is the proper venue for this action because Defendant's principal place of business is in Miami-Dade County, pursuant to 28 U.S.C. §1391. This Court has personal jurisdiction over Defendant.

## FACTS COMMON TO ALL COUNTS

6. CCA is the general contractor of the $3.5 billion Baha Mar resort project in Nassau, Bahamas (the "Project"). CCA assumed responsibility for the procurement and delivery of furniture, fixtures and equipment after the commencement of the Project. The Government of The Commonwealth of The Bahamas has determined and articulated that the completion of this Project is a national priority.

7. To fulfill a key element of a major component of the Project, CCA entered into a written agreement with Source for the completion of the purchase and delivery of 2,891 Chairs. Consistent with industry standards, the written agreement took the form of a fully executed purchase order specifying the item to be sold, the quantity, the cost, and payment terms.

8. Prior to the execution of the contract at issue here, 1,471 of the Chairs had been delivered to the Baha Mar location. Source acknowledged having received full payment for those Chairs.

9. During the course of the negotiations for the balance of the Chairs, Source expressly advised CCA that the amount of $390,500 was due and owing for the remaining Chairs that CCA was seeking to acquire. The parties thereafter entered into a Purchase

Order for the purchase of the 1,420 Chairs for that amount. The Purchase Order and related invoice are attached as Exhibit A (together, the "Contract").

10. In fact, documents later produced by Source revealed that the prior contractor involved in the purchase of the first 1,471 Chairs had actually paid Source $639,000.00 for the Chairs and that only $156,025.00 was due and owing for the balance of the 1,420 Chairs that CCA was seeking to purchase. *See* Exhibit B, a reconciliation of funds later received by CCA from Source for items related to the Baha Mar project. Source intentionally withheld this information from CCA at the time the parties entered into the Contract.

11. Relying on Source's express representation as to the amount of money owed, CCA transmitted to Source on January 11, 2017, the amount of $390,500 for the purchase of the 1,420 Chairs. Source acknowledged receipt of the payment. *See* Exhibit C, CCA's payment information and Exhibit D, Source's acknowledgement.

12. Thereafter, on at least two occasions, Source advised CCA that CCA's Chairs were in production. Source went so far as to advise CCA of when the Chairs were expected to leave Source's facilities for delivery to CCA. *See* Exhibits E and F.

13. The Chairs were never delivered to CCA. In fact, contrary to its written assurances, Source never even began to manufacture the Chairs. Source's CEO, Gerald Shvartsman, recently stated under oath, that the person or persons who advised CCA that the Chairs were in production were lying. He testified that Candice McCarthy, Source's representative upon whom CCA had been principally relying, was a "liar."

14. Source has never delivered the Chairs for which it had been paid more than in full.

010-8510-8926/1/AMERICAS

15. Source has failed and refused and continues to fail and refuse to return CCA's funds that were paid for the Chairs.

16. To the contrary, without CCA's knowledge or consent, Source utilized those CCA funds improperly and unlawfully to pay itself for orders from third parties, orders for which Source claimed it had not been paid in full.

17. Source never offered to deliver to CCA the items for which Source had paid itself in full through the use of CCA's funds.  Source then sold those same items on the open market and retained the proceeds of those sales as well.

18. As a direct and proximate result of Source's intentionally wrongful conduct, CCA has suffered damages well in excess of $75,000, which represents the amount overpaid for Chairs that were never delivered.

## **COUNT I – BREACH OF CONTRACT**

19. CCA adopts and incorporates the allegations in paragraphs 1-18 as if fully set forth herein.

20. The Contract is binding on Source.  CCA has fully performed its obligations under the Contract.

21. Despite its clear obligation under the Contract, Source has failed and refused and continues to fail and refuse to deliver the 1,420 Chairs for which Source has been paid in full.

22. Source knowingly and unlawfully utilized CCA's payment for its own purposes, without CCA's knowledge or consent.

23. In this manner, Source has willfully breached the Contract and continues to breach the Contract.

24. Source has arrogantly asserted the right to utilize CCA's funds as Source sees fit and to retain in full the benefits Source has derived from the use of CCA's funds.

25. As a result of this intentional breach of the Contract CCA has been damaged. It has been denied the product for which it has paid, has been unlawfully deprived of its own funds and the use of those funds and has been otherwise damaged.

WHEREFORE, CCA requests entry of judgment in its favor for the full amount it paid for the Chairs, plus interest from the date of payment and for such other relief as the Court deems appropriate.

## **COUNT II – FRAUD**

26. CCA adopts and incorporates the allegations in paragraphs 1-11 as if fully set forth herein.

27. Prior to CCA's efforts with Source, Source had received payments totaling $639,000.00 for the 2,891 Chairs originally ordered for the Baha Mar project, leaving $156,025.00 as the total unpaid balance.

28. Source nevertheless intentionally misrepresented to CCA in December 2016 that $390,500.00 remained unpaid on the 1,420 Chairs for which CCA was making payment. That representation was false and known by Source to be false at the time the information was provided to CCA. Source made this false representation for the purpose of inducing CCA to over-pay for the Chairs it was to receive.

29. CCA reasonably relied on Source's false representation in paying $390,500 for the Chairs even though only $156,025.00 was actually owed.

30. By reasonably relying on Source's false statement in this manner, as intended by Source, CCA has been damaged.

WHEREFORE, CCA requests entry of judgment in its favor for the amount it overpaid for the Chairs, plus interest from the date of the payment and for such other relief as the Court deems appropriate.  CCA intends to amend this Count of its Amended Complaint to seek punitive damages, once a sufficient evidentiary basis exists under Florida law.

## COUNT III – FRAUD

31. CCA adopts and incorporates the allegations in paragraphs 1-13 as if fully set forth herein.

32. Having placed its order and paid for the Chairs, CCA appropriately requested information on when the Chairs would be delivered.

33. On two separate occasions, on February 28, 2017 Source misrepresented to CCA that the Chairs were in production.  It further misrepresented to CCA the date on which the Chairs might be expected to leave Source's facility.  *See* Exhibits E and F.

34. These representations by Source to CCA were false and were known to be false when made.  In fact, Source has acknowledged, under oath, that these statements regarding the production of the Chairs were "lies."  The Chairs were never in production.

35. These misrepresentations regarding the status of the Chairs were made by Source intending for them to be relied upon by CCA.

36. CCA reasonably relied upon these misrepresentations as Source intended it to do.  Expecting the Chairs to be delivered as represented, CCA made no arrangements to obtain chairs from other suppliers.

37. As a result of its reasonable reliance on Source's intentional, knowing misrepresentations CCA has been damaged.  It now must find an alternate source for

chairs that may not match the chairs already received, detracting from the appearance of the Five-Star resort for which they are intended. It must do so on an expedited basis in order to meet its contractual obligations to the owner of the Baha Mar project. It is expected that it will incur extraordinary costs because of the predicament in which it finds itself as a consequence of Source's intentional, malicious misrepresentations.

WHEREFORE, CCA requests entry of judgment in its favor for all the expenses it will incur in obtaining chairs to replace the Chairs Source had falsely and intentionally advised CCA were in production, and for such other relief as the Court deems appropriate. CCA intends to amend this Count of its Amended Complaint to seek punitive damages, once a sufficient evidentiary basis exists under Florida law.

Dated: July 31, 2017.

Respectfully submitted,

/s/ Alvin B, Davis
Alvin B. Davis
Florida Bar No. 218073
Jonathan R. Weiss
Florida Bar No. 057904
Squire Patton Boggs (US) LLP
200 South Biscayne Boulevard
Suite 4700
Miami, FL 33131
Telephone: (305) 577 2835
Facsimile: (305) 577 7001
Email: alvin.davis@squirepb.com
Email: jonathan.weiss@squirepb.com

***Counsel for Plaintiff***

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true copy of the foregoing was served via the CM/ECF system this 31st day of July, 2017.

                                            */s/Alvin B. Davis*